The next case up is 410-0528, People v. Four Thousand Eight Hundred Fifty Dollars US Currency for the Appellant is Mr. Mansfield, for the Appeal is Ms. Mayo, Mr. Mansfield, and Mr. Smith. Thank you, Your Honor, Justices, Counsel, and may it please the Court. This is, as you know, a judicial in-rim proceeding. It is that because after receiving notice of pending forfeiture in 2007, Mr. Woodland filed a claim on the currency the State had seized, and the State, after a trip to this Court, which two of you are personally aware of, filed a verified complaint for forfeiture. Woodland's claim brought the judicial procedures in Section 9 of the Forfeiture Act into play, and the State's complaint brought it and the currency into the Court's jurisdiction. Jurisdiction, I believe, right now is the critical issue, and I would like to address it first. The Circuit Court's constitutionally granted jurisdiction attached when the State filed its complaint for forfeiture. Woodland has countered that because the complaint was filed more than 45 days after he filed his own claim, jurisdiction never attached. He errs because the 45-day timing provision in Section 9A is a statute of limitation. It is not an element of the Circuit Court's jurisdiction, even though the legislature created this justiciable matter. It is not because the Illinois Constitution in Article VI, Section 9 states Circuit Courts have original jurisdiction of all justiciable matters except those assigned to the Illinois Supreme Court. The Constitution in that section continues that Circuit Courts shall also have power to review administrative action as provided by law. Thus, the 45-day timing provision in Section 9A is a statute of limitation. It is an affirmative defense that must be pled or forfeited. Woodland did not plead it, therefore he forfeited it. Do you have questions on this point? Well, how did it get before us here? When you said he did not plead it, something must have happened. Well, that's right. Instead of filing an answer to the state's complaint for forfeiture, Woodland filed a motion to dismiss raising tardiness or timeliness as the basis. The failure of the state to send timely notice of forfeiture after the initial seizure. My recollection is that Section 5 of the Act calls upon the seizing agency to provide the state's attorney with notice in 52 days. The state's attorney then, under Section 6A, has an additional 45 days to file an administrative notice of forfeiture. And what happened here is instead of that notice being filed in a cumulative 97 days or less that 5 plus 6A would seem to require, notice was sent to Woodland at 134 days. It then came to this court. This court found that the state should have filed a complaint for forfeiture to initiate, to bring the circuit court's jurisdiction into play. The state had not done that, therefore this court vacated and remanded. And upon remand, after the minimus was received, the state did file a verified complaint for forfeiture. In which Woodland responded, not with an answer as called for by Section 9, C, D, and E. No answer was filed, but instead Woodland filed another motion to dismiss on timeliness grounds. The court, after a hearing, granted that, and we are here. Is that, Your Honor, a sufficient presentation of the background? Yes. Okay. Okay. Okay. So, point being is I believe that contrary to Woodland's argument on appeal, the circuit court did have jurisdiction even though the state's complaint for forfeiture was filed more than 45 days after Woodland's initial claim. Now, that brings me to the second jurisdictional concern. That is whether Woodland ever brought himself or his motion for dismissal before the jurisdiction of the circuit court. He did not, and the state's argument is he is not a proper party here because he never filed the answer called for by Section 6, I'm sorry, Section 9, C, D, and E of the Judicial In Rim Proceedings Section of the Forfeiture Act. Now, he has argued, if I understand it correctly, that his October 2007 Section 6, C verified claim is an adequate substitute. Neither the Act nor any case law he cites is so provided. Now, while seven of the eight mandatory pleadings listed in Section 6, C and in 9, D are identical, one is different, and that is the one in Section 6, 1. Section 6, 1 in Section 9 gives claimants a much more limited avenue of relief. Under 6, any, wrong thing, the complainant, the claimant, I'm sorry, may cite, must cite a specific provision of law relied upon. However, under Section 9, the owner or interest holder must identify the specific provisions of Section 8 of the Forfeiture Act, which is much more limited. So they are highly similar, but in this specific aspect they are different. Also, the substance of what the Act allows for a claim under Section 6 and an answer under Section 9 differ. Under Section 6, any person claiming an interest may file a claim. Under Section 9, only, only an owner of or an interest holder in the property may file an answer asserting a claim. Under Section 6, C, all that's needed is a verified claim. Under 9, D, the answer must be signed by the owner or interest holder under penalty of perjury. Not shall be, but must be. And under 9, E, the answer must be filed with the court within four to five days. And it is for these reasons that I believe it is fair to argue, and I think correct, that Woodland never established his own standing, his own interest in this judicial proceeding. Third, wrapped into the issues of whether Section 5 and 6A are directory, as the state reads the statute, or mandatory, and whether the five-year statute of limitation in Section 9L trumps the timing provisions of Section 5 and 6A, is the issue of prejudice. Woodland, I believe, argues he was prejudiced because the state's late notice denied him use of the currency. That is not the prejudice with which the Fourteenth Amendment's guarantee of due process is concerned. Rather, the prejudice concern as set forth by the U.S. Supreme Court nearly 30 years ago in U.S. v. $8,850. The concern is whether the delay was so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time. Woodland never lost the right to a meaningful hearing, and his claim was filed only 34 days after the cumulative 142 days established by Sections 5, 6A, and 6C1. That is his time to respond had expired. The state's position that, yes, the Decatur Police Department should have sent notice to the state's attorney earlier. That did not, and has not, prejudiced the defendant. I'm sorry. My apologies. I'm a criminal lawyer far too long. Mr. Woodland is not a defendant here. Then there is the question, and it's the substantive issue here, of whether the trial court properly dismissed the forfeiture action because the state's notice to Woodland was in a total of, I believe, 37 days late. Let me make two points. While the notice was late for Sections 5 and 6A, it was well within the five-year statute of limitations established in Section 9L. That statute allows the state more than the 5 plus 6A, 97 days. And it must be read as an allowance to the state, because otherwise that section would not include tolling for the following reasons. This five-year statute of limitations is tolled while the claimant is out of state. It is tolled while the claimant is in confinement. It is tolled while related criminal proceedings are in progress. Bottom line, Section 9L provides claimants all the due process protections that the Constitution requires, and it trumps Sections 5 and 6A. Finally, those two sections, 5 and 6A, are directory, not mandatory. The statute of limitation in Section 9L is the property owner's ultimate protection against a stale claim. Neither Sections 5 nor 6A contain any language penalizing tardiness, yet that is a clear indication of mandatory versus directory. Nothing in those sections bars further action by the state if its notice is late. Lastly, while these sections are designed to speed up the hearing process for the owner's benefit, the sort of delay here did not deny Woodland due process, did not prejudice him, and is far less than the 18 months delay the U.S. Supreme Court countenanced nearly 30 years ago in U.S. v. 8800. Let me pause and ask if you have any questions I can attempt to answer at this point. I will, I can address, if you wish, the foreign, the Montana and the Wisconsin and the Connecticut cases, Woodland cited in his brief, if you wish, but otherwise I will leave it for you to well realize that they do not apply here. Thank you, Counsel. Thank you, Your Honors. Ms. Mayer. Thank you, Your Honor. May I please have the court? Counsel. Counsel. Thank you. It seems like the state wants it both ways in this case. The state wants the must and shall provisions of the act to apply as mandatory whenever they're applied to my client. Therefore, when it comes to filing a verified answer, you must file within 45 days of the state's verified complaint. But when it comes to filing, excuse me, to giving notice within the 97 days provided by the statute or filing their verified complaint within the 45 days from receiving my client's directory, we don't really have to do it. They just put it in there. Maybe we can follow it. Maybe we don't have to. But if it's something that the claimant has to do, then absolutely, without a doubt, it is a must provision. It is not permissive. It is mandatory. It's a jurisdictional question, and I believe that two of the members of this panel heard this case the first time it was up on appeal. And the decision was that the trial court erred because the trial court did not have jurisdiction to dismiss the case. That is the law of this case. The mandate came down, and the state filed its verified complaint after the mandate was issued. Once that complaint was filed, the court had jurisdiction over this matter. Once the court had jurisdiction, all of the claimant's complaints, all of the claimant's claims, were valid as against the state. All of its reasons in its motion to dismiss were valid as against the state. And claimant timely filed a motion to dismiss well within the 45 days, well within 30 days after receiving the motion to dismiss. The state would have this court believe that there is no prejudice when the state misses the deadlines for giving individuals notice that their property has been seized. I would submit that this is not the case, as in Robinson, where it was merely a 10-day notice from the clerk. This isn't a notice. This is somebody's money. This is maybe somebody's livelihood. This is $4,000. That's a lot of money. That's a lot of money for my client. That's a lot of money for a lot of people. To deprive an individual of that money is to prejudice that individual. And the statute has outlined a procedure by which the state can affect its purpose of attempting to curtail drugs and drug crimes, while at the same time protecting the rights of the individuals whose property is claimed. Part of that is to give specific deadlines for things to happen. If we can just ignore the 52 days that the sheriff has to give notice to the state's It doesn't matter. Why did the legislature borrow? And here we have an individual without their property for a year, six months. I mean, how long? When do we draw the line and say, OK, now it's time we've got to listen to the statute? The legislature put it in here on purpose. They put it in here on purpose, and they put it in here with mandatory language. Mandatory language, and there's nothing in the statute to indicate that they meant it to be directory. With respect to this issue of standing, in addition to wanting it both ways, I would also point out to the court that in a case called People v. $280,200 of U.S. currency, the court addressed an appeal wherein the claimant had filed a motion to dismiss and won. Nowhere in that case did anybody say, we can't file a motion to dismiss in a forfeiture action. It's nowhere. There's nothing that says a motion to dismiss is not a proper procedural step to take in a case like this. Moreover, the purpose of standing is just to make sure that people who have an interest in the property are the people who are making claims. My client filed a verified complaint. It's an affidavit. It's a sworn statement that, yes, that is my property, and yes, I want it back. That establishes standing. Whether or not he filed an answer, it was clear that he was an interested party for this case. And then finally, the state insists that this is an action in Section 9 of the Act. We never get out of Section 6 of the Act. Section 6 of the Act works like a roadmap. The very first paragraph says, if it's more than $20,000 or real property, then do not pass go. Go directly to Section 9. No more in Section 5. You're out. Or Section 6. But if it's less than $20,000 and not real property, then you're right here in Section 6, and the provisions of Section 6 apply. The state did not comply with the mandates of Section 6. They didn't file a verified complaint after receiving notice of claim for more than three years. For more than three years. And you can say it was stayed while pending appeal three years. Three years before the appellate briefs were ever written. It was a year before the appellate briefs were ever written. They had ample time to file a verified claim. It never happened. In addition, Section 6 gives the relief if the court determines that the property should be returned to the claimant. If you look at Section 6C3, it provides the procedure by which the property is returned to the claimant. So any property that is less than $20,000 is governed by Section 6, not Section 9. In the Section 9 five-year statute of limitations, it doesn't apply. It's a red herring. That provision seems to contemplate property that has not been seized, but they know it's out there. We know that you're committing criminal activity. We know there might be some property out there, but we haven't seized it yet. Because if they had seized it, then they would have 45 days to file a verified claim if it was more than $25,000, or 45 days to send notice if it was under $20,000. Wouldn't it have been helpful if the legislature provided in the five-year statute of limitations section that were properties not seized, then the statute of limitations is five years for the institution of a civil action? Absolutely, Judge. That would have been very clear. Yes. I was going to suggest that maybe somebody around your firm might want to submit something to the legislature. Write a letter. Yeah. Are there any questions? Anything further? No. Thank you, Judges. Thank you, Counsel. Mr. Mansfield, any rebuttals, sir? The legislature, in drafting section six and in section nine, in some sections used the word shall, and in others used the word must. Must is the stronger, more demanding term. There was a reason that the legislature used the two different words. In the U.S. Supreme Court, in the $8,850 case, no hearing was started for 18 months, and yet that person was deprived of the use of $8,850 brought into the U.S. without declaring it at customs. The U.S. Supreme Court found that that was not so long as to deprive the person of a meaningful hearing within a meaningful time, and that is the object of due process. Now, if you will forgive me, I do have a quibble with Counsel or Mr. Woodland's reading of section 6C3. As I read it, if none of the seized property is forfeited in the judicial in rem proceeding, the clerk of the court shall return to the claimant, unless the court orders otherwise, 90% of the sum which has been deposited and shall retain as costs 10% of the money deposited. I believe that section addressed only the cost bond, not the property that was seized. And therefore, I respectfully ask on behalf of the State of Illinois that you reverse the decision of the trial court and remand either for a default judgment or for proceeding on the merits. And again, may I honestly say to all of you, thank you very, very much. Thank you, Counsel. I take this matter under advice of the Dean of Reasons.